# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYBETH KUZNIK | ) |
| Plaintiff, | ) |
| | ) 2:22-CV-1651 |
| v. | ) |
| | ) |
| ARMSTRONG COUNTY, DONALD K. MYERS, JASON RENSHAW, and PAT FABIAN, in their official capacity as the ARMSTRONG COUNTY BOARD OF COMMISSIONERS, and JEFFREY JESSELL, | ) |
| Defendants. | ) |

## **OPINION**

### J. Nicholas Ranjan, United States District Judge

Armstrong County hired Marybeth Kuznik as its Election Director/Chief Registrar on August 31, 2020, but terminated her employment after less than a year. ECF 51-1, 40:21-41:4, 42:18-23. The County argues that it had a legitimate reason to terminate Ms. Kuznik's employment—it received many complaints about Ms. Kuznik's poor job performance from County employees, poll workers, judges of elections, and civilians throughout her tenure. ECF 51-2, 50:21-25; ECF 51-4. Those complaints included allegations that Ms. Kuznik was disorganized, neglected her job duties, lacked focus in the busy election season (*e.g.*, ECF 51-4, 51-19), failed to provide enough supplies and ballots during elections (ECF 51-40, 51-41), and failed to include a mayoral race on a ballot (ECF 51-38). In a post-election debriefing meeting in June 2021, the County's Chief Clerk and HR Manager raised the various complaints with Ms. Kuznik. ECF 51-4; ECF 51-5, 37:3-39:9. The record does not reflect that the County made any definitive decision to terminate Ms. Kuznik's employment at that time. ECF 51-2, 49:2-50:25. However, five days later, Ms.

Kuznik failed to appear in court under subpoena to testify in a recount challenge for a local election; that oversight was the "tipping point" for the County, and the County Commissioners made the decision to terminate Ms. Kuznik's employment. ECF 51-1, 113:4-17; ECF 51-2, 49:9-50:25.

Ms. Kuznik has a different theory. She says that Jeffrey Jessell, an election technician and longtime independent contractor for the County, "embarked on a campaign of intimidation and falsehoods against [Ms.] Kuznik" based on her sex, "sabotaging her at every turn, fabricating offenses, and informing anyone who would listen of her supposed shortcomings." ECF 54, p. 1. She alleges that upon meeting Ms. Kuznik on her first day of employment, Mr. Jessell told her, "a woman like you won't be here in a year." *Id.*; ECF 51-1, 72:20-24. From there, Mr. Jessell purportedly engaged in "an escalating pattern of bullying[,]" including calling Ms. Kuznik "lazy" and "incompetent" in person and in "[h]ostile emails," with a "demeanor" that "was hostile, loud," "abrasive[,]" and made her feel "threatened." ECF 51-1, 82:1-12, 189:11-23.

Ms. Kuznik asserts that Mr. Jessell, motivated by discriminatory animus, created a false narrative about Ms. Kuznik's job performance, leading to the termination of her employment and replacement by a younger male employee. ECF 54, pp. 3-5. Thus, she alleges that the County discriminated against her and created a hostile work environment in violation of Title VII and the Age Discrimination in Employment Act.[1] At the least, she argues, which story to believe—hers, or the

---

[1] She also brings related state-law claims against the County for violating the Pennsylvania Whistleblower Act (Count III), violation of the Pennsylvania Human Relations Act (Count IV), and breach of contract/wrongful discharge (Count V); against the three County Commissioners for breach of contract/wrongful discharge (Count V); and against Mr. Jessell for interference with contract (Count VI). ECF 16, ¶¶ 4, 146-58.

County's—creates a material dispute of fact that must be decided by a jury, not the Court at summary judgment. ECF 54, p. 4.

But Ms. Kuznik's mere assertion that a genuine dispute of material fact exists does not make it so. Under the familiar summary-judgment standard, a genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" after drawing all reasonable inferences in her favor. *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). In opposing summary judgment, Ms. Kuznik "may not rest upon the mere allegations or denials of [her] pleadings but, instead, must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice." *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018) (cleaned up).

After drawing all reasonable inferences and construing all facts for Ms. Kuznik, the Court concludes that the record lacks evidence supporting Ms. Kuznik's theory, such that no reasonable jury could return a verdict in her favor as to any of the claims in this case. *Goldenstein*, 815 F.3d at 146. Summary judgment is therefore appropriate.

## DISCUSSION & ANALYSIS

**I. Ms. Kuznik's claims for discrimination under Title VII and the ADEA fail because she hasn't shown pretext.**

Courts apply the *McDonnell Douglas* framework to claims for discrimination under Title VII and the ADEA. *Willis v. UPMC Child.'s Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015); *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). Once a plaintiff makes a prima facie case of discrimination, the defendant must rebut the inference of discrimination with a legitimate, non-discriminatory reason for its actions. *Shaffer v. Cranberry Twp.*, No. 19-1481, 2021 WL 4710919, at *5 (W.D. Pa. Oct. 8, 2021) (Weigand, J.). If the defendant does so, the burden shifts back to the

plaintiff to "provide evidence from which a jury could reasonably infer that the defendant's proffered explanation for its conduct is, in reality, pretext for unlawful discrimination." *Id.* at *5.

The parties dispute whether Ms. Kuznik has met her *prima facie* burden, but the Court need not resolve that issue. Assuming she has met her *prima facie* burden, the County has proffered with evidentiary support a non-discriminatory reason for the termination of Ms. Kuznik's employment—that she consistently performed poorly in her duties. So the burden shifts back to Ms. Kuznik to show that this reason is pretextual. She can do so in a few different ways.

For example, she can "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (cleaned up). Additionally, she can "point to evidence that would allow a factfinder to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Willis*, 808 F.3d at 645 (cleaned up). In other words, Ms. Kuznik must point to at least some evidence that would cause a jury to disbelieve that the County terminated her employment because of her poor job performance.

Ms. Kuznik hasn't met her burden of creating a genuine dispute of fact about pretext at summary judgment. She essentially makes two arguments—neither of which suffices.

First, Ms. Kuznik appears to be proceeding under a "cat's paw" theory[2] of liability, and argues that Mr. Jessell harbored discriminatory animus, which

---

[2] This is a charitable reading of the amended complaint. Ms. Kuznik does not plead and does not cite in the summary-judgment briefing to any "cat's paw" case law. As

somehow tainted the decision by the County to terminate Ms. Kuznik. *Lamb v. Montgomery Twp.*, 734 F. App'x 106, 113 (3d Cir. 2018) ("Under that theory, if a non-decision maker's discriminatory act serves as the proximate cause for the ultimate adverse employment action, then employer liability can attach.").

The evidence she offers in support of pretext is Mr. Jessell's comment on Ms. Kuznik's first day of employment, "a woman like you won't be here in a year." ECF 51-1, 72:20-24; ECF 54, pp. 3-4. Taking as true for purposes of summary judgment that Mr. Jessell made that statement,[3] it cannot establish pretext. This is so because "[s]tray comments lacking ***any*** temporal or substantive relationship to the adverse employment action are not evidence of discriminatory intent." *Wang v. Washington Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 74 (D.D.C. 2016) (cleaned up, emphasis in original); *Shontz v. Rite Aid of Pennsylvania Inc.*, 619 F. Supp. 2d 197, 210 (W.D. Pa. 2008) (Conti, J.) ("stray comments . . . are generally not sufficient standing alone to warrant a finding of pretext.").

Mr. Jessell's stray comment, made on the first day of Ms. Kuznik's employment, was not temporally close enough to the date her employment was terminated (almost ten months later) to be probative of discriminatory animus. *Etheridge v. Novo Nordisk Inc.*, No. 19-13676, 2022 WL 1689910, at *11 (D.N.J. May

---

this Court has found, this usually would constitute waiver. *Bagic v. Univ. of Pittsburgh*, No. 18-511, 2022 WL 267356, at *2 n.3 (W.D. Pa. Jan. 27, 2022) (Ranjan, J.) ("The failure to raise a 'cat's paw' theory actually goes beyond simple waiver at trial. Dr. Bagic never pled this theory in her complaint. This is significant, because typically when that theory is placed at issue in the pleadings, it is subject to pre-trial motions practice, including at summary judgment, as well as in motions *in limine* and proposed pre-trial jury instructions and objections. Dr. Bagic cannot now invoke an entirely new and unpled theory of liability at this late juncture."), *aff'd*, No. 22-1183, 2022 WL 17424326 (3d Cir. Dec. 6, 2022).

[3] Mr. Jessell denies making the statement, and Jennifer Bellas, the prior Election Director who introduced Ms. Kuznik to Mr. Jessell, corroborates his position. ECF 51-9, pp. 8-9; ECF 51-10, 6:20-25.

26, 2022) (no pretext where discriminatory comments were made "weeks before" plaintiff's employment was terminated). It is also undisputed that Mr. Jessell was not involved in the decision to terminate Ms. Kuznik's employment, nor is there evidence that he had influence over those with the power to terminate her employment (*i.e.*, the County Commissioners). *E.g.*, *Yingst v. Texas New Mexico Newspaper P'ship*, No. 12-1803, 2014 WL 3952611, at *10 (M.D. Pa. Aug. 13, 2014) ("remarks made by supervisors directly involved in the termination decision at issue can be evidence of their discriminatory animus, even if the remarks were not made in connection with the termination decision." (cleaned up)); ECF 51-2, 49:18-20 (decision to terminate Election Director comes from the Commissioners), 60:25-61:4 (Commissioner Fabian testifying that he knows Mr. Jessell "from a distance, not on a personal level by any means").

The other way in which Ms. Kuznik seems to be attempting to show pretext is to suggest that the reason for her termination—poor performance—was implausible or incoherent, and based on false accusations from Mr. Jessell. But the record does not support this argument.

Ms. Kuznik points to similarities between a list of complaints about her compiled by Mr. Jessell (ECF 51-19) and a list compiled by the County for the June 2021 de-briefing meeting between her and the Chief Clerk and HR Manager (ECF 51-4).[4] Based on the similarities, she asks the Court to infer that "the substantive complaints regarding Ms. Kuznik's performance, directed to the county Commissioners by Mr. Jessell, were tainted by [Mr. Jessell's] animus against her on the basis of her sex." ECF 54, p. 5. That might be enough if evidence existed showing

---

[4] The County's list was compiled by the Chief Clerk and HR Manager at the request of the Commissioners from a "wide variety" of sources, including the public, Mr. Jessell, and other County employees, further undermining Ms. Kuznik's cat's-paw theory. ECF 51-5, 37:20-38:22; ECF 51-9, p. 48.

that Mr. Jessell was the only source of the complaints or had influence over the Commissioners, who had sole authority to terminate her employment. ECF 51-2, 49:18-20; *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 286 (3d Cir. 2001) ("Under our case law, it is sufficient if those exhibiting discriminatory animus influenced or participated in the decision to terminate."). But no such evidence exists.

To the contrary, the record shows that other County employees (*e.g.*, ECF 51-28) and unaffiliated members of the public made complaints about Ms. Kuznik (*e.g.*, ECF 51-4, 51-38, 51-41). In fact, Ms. Kuznik's testimony supports the validity of some of those complaints. *See, e.g.*, ECF 51-1, 67:17-68:2 (describing how she did not utilize email and scheduling tools), 87:22-88:7 (describing complaints from the public), 114:11-116:23 (describing failure to appear under subpoena). Since independent sources corroborated the complaints against Ms. Kuznik, the overlap between Mr. Jessell and the County's lists, without anything more, doesn't indicate a weakness, implausibility, inconsistency, or contradiction in the County's reason for terminating her employment. *Willis*, 808 F.3d at 644-45.

To be sure, Ms. Kuznik might fare better if she were able to offer evidence that a particular complaint that Mr. Jessell made in his list was false, and that the false complaint was then relied upon to taint the decision by the County.[5] This would be

---

[5] The closest Ms. Kuznik comes is in her summary-judgment brief where she argues: "Certainly, Ms. Kuznik disagrees with the accusations of negligence and incompetence leveled against her." ECF 54, p. 5. Then, she cites her deposition testimony; but even there, she explains how she generally disagreed with some of the concerns that were raised by the County in the June 2021 de-briefing meeting. ECF 51-1, 106:22-107:19. No specifics were provided. That is not enough on summary judgment to create a genuine dispute of fact.

the most common way to demonstrate pretext in a cat's paw scenario. But Ms. Kuznik presents no such evidence.[6]

In short, Ms. Kuznik's claim for discrimination turns on conjecture, not evidence. *See* ECF 51-1, 119:23-120:4 (Ms. Kuznik testifying, "I'm not going to speculate" about the reasons for the termination of her employment "because anything I would say would be speculation."). But more than speculation is needed to raise a genuine dispute of material fact at summary judgment. *NVR, Inc. v. Majestic Hills, LLC*, 670 F. Supp. 3d 206, 214 (W.D. Pa. 2023) (Ranjan, J.) ("Summary judgment is essentially 'put up or shut up' time for the non-moving party." (cleaned up)), *reconsideration denied*, No. 18-1335, 2023 WL 3726895 (W.D. Pa. May 30, 2023). Since Ms. Kuznik's unsupported assertions are not enough to allow a factfinder to disbelieve the County's nondiscriminatory reason for terminating her employment or determine that discrimination was more likely than not a motivating cause of the termination, the Court grants summary judgment for the County as to the discrimination claims. *Hatch v. Franklin Cnty.*, 755 F. App'x 194, 199 (3d Cir. 2018).

## II. The record does not establish that Ms. Kuznik experienced "severe or pervasive" discrimination to show a hostile work environment.

Ms. Kuznik also alleges that Mr. Jessell's behavior, and the County's failure to address it, created a hostile work environment.[7] To succeed on that claim, she "must

---

[6] Additionally, the record here reflects that the "tipping point" for Ms. Kuznik's termination was her failure to appear for a court hearing. ECF 51-2, 49:2-50:25. A fair reading of the record, even construing inferences in Ms. Kuznik's favor, is that the County hadn't decided to terminate her before then, even coming out of the June 2021 de-briefing meeting. *Id.* In other words, it was the missed court hearing that was the motivating factor for County's ultimate decision. And on that, Ms. Kuznik offers nothing to dispute that she did, in fact, miss the court hearing, or that there is some pretext associated with this incident.

[7] "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex [or age], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally

demonstrate an objectively hostile work environment[,]" including by showing "severe or pervasive" discrimination sufficient to alter the conditions of her employment. *Hanafy*, 669 F. Supp. 3d at 440 (cleaned up). "In examining alleged 'severe or pervasive' discrimination in a workplace, the court must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (cleaned up). Even viewing the evidence in the light most favorable to Ms. Kuznik, her claim comes up short.

Ms. Kuznik again relies on Mr. Jessell's remark that "a woman like you won't be here in a year." ECF 51-1, 72:20-24; *see* ECF 54, p. 6. But that one remark isn't enough. A claim for hostile work environment requires more than "offhand comments and isolated incidents"—the discriminatory conduct "must be extreme enough to amount to a change in the terms and conditions of employment[.]" *Carroll v. Guardant Health, Inc.*, 511 F. Supp. 3d 623, 657 (E.D. Pa. 2021) (cleaned up). That one comment, while unprofessional and inappropriate, doesn't rise to the requisite level. *Stucke*, 685 F. App'x at 154 ("[A] single, offhand, hearsay comment is insufficient to create the kind of inference of [discriminatory] animus necessary to establish a hostile work environment claim."); *Collins v. Kindred Hosps. E., LLC*, No. 14-17, 2016 WL 4264588, at *9 (W.D. Pa. Aug. 12, 2016) (Conti, C.J.) ("Courts within

---

affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *Jeffery v. Erie Cnty. Pennsylvania*, No. 23-84, 2024 WL 1257347, at *8 (W.D. Pa. Mar. 25, 2024) (Baxter, J.) (standards for analyzing hostile work environment under ADEA and Title VII are the same).

the Third Circuit have often found that one or two isolated comments is insufficient to establish a hostile work environment.").

Ms. Kuznik also points to the unprofessional emails between her and Mr. Jessell. But those too don't rise to the level of a hostile work environment. It is undisputed that the working relationship between Ms. Kuznik and Mr. Jessell was discordant, and Mr. Jessell was by his own admission "unprofessional" in his emails to Ms. Kuznik. ECF 51-9, p. 17; *see also* ECF 51-5, 40:16-41:9. But as the Third Circuit has stated: "Title VII is not a general civility code and . . . the ordinary tribulations of the workplace are not grounds for a hostile work environment claim." *Stucke*, 685 F. App'x at 154 (cleaned up).

Put differently, Mr. Jessell's emails and general conduct were neither severe nor pervasive enough to "amount to a change in the terms and conditions of employment[.]" *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017) (cleaned up). That's because Mr. Jessell's comments reflect ordinary workplace frustrations about Ms. Kuznik's communication lapses (ECF 51-30), disorganization (ECF 51-26), and failure to follow through on her job duties (ECF 51-22) or meet deadlines (ECF 51-31). In other words, this isn't a case in which the plaintiff suffered ridicule, insensitivity, or abusive language that's unbecoming of the workplace (though even those kinds of off-hand incidents are often not enough to create a hostile work environment). *See Rivera v. PRA Health Scis.*, No. 22-2551, 2023 WL 7021183, at *6-7 (E.D. Pa. Oct. 24, 2023) (collecting cases). Instead, the squabbles between Mr. Jessell and Ms. Kuznik reflect their everyday job duties, and do not reflect threatening conduct or actions that would unreasonably interfere with Ms. Kuznik's position. *See, e.g.*, ECF 51-1, 170:6-15 (affirming Mr. Jessell "was telling [Ms. Kuznik] what [she] should be doing" regarding tasks and deadlines), 192:2-12 (describing incident when Mr. Jessell "was really loud" and "upset about something

that he needed or he wanted, and he alleged I didn't give it to him."). A hostile work environment must be so severe or pervasive such that it creates a "change in the terms of conditions of employment"; the angry workplace arguments about workplace matters that are at issue here simply did not rise to the level to alter Ms. Kuznik's terms and conditions of employment.

The Court therefore concludes that Ms. Kuznik has not raised a genuine dispute of material fact that Mr. Jessell created a hostile work environment. In turn, Ms. Kuznik's charge that the County failed to address that hostile work environment fails, so the Court will grant the County's motion for summary judgment as to the hostile work environment claims.

### III. The Court exercises supplemental jurisdiction over the remaining claims, and will grant summary judgment for Defendants.

Ms. Kuznik also brings related state-law claims against the County Defendants and Mr. Jessell based on pendent jurisdiction. ECF 16, ¶ 4. The Court finds that it has jurisdiction over those claims because they "derive from a common nucleus of operative fact and the claims are such that they would normally be expected to be tried in one case." *R.B. v. Westmoreland Cnty.*, No. 11-1519, 2013 WL 4498978, at *4 (W.D. Pa. Aug. 19, 2013) (Schwab, J.).[8] Moreover, no Defendant has

---

[8] The Court also concludes that exercising jurisdiction over these claims satisfies the test in *Ambromovage v. United Mine Workers of Am.*, 726 F.2d 972, 989 (3d. Cir. 1984). Specifically, the Court finds that there is a common nucleus of operative fact between Ms. Kuznik's federal and state-law claims; the exercise of jurisdiction will not violate a federal policy determination because the Court's exercise of jurisdiction over the entire case is based on the federal questions posed at Counts I and II; and reaching the merits of the claims is in the interest of judicial economy. *See R.B.*, 2013 WL 4498978, at *4-5.

argued against this Court's exercise of jurisdiction over these claims. Accordingly, the Court will reach the merits of Counts III through VI.

### A. Ms. Kuznik cannot show "waste" or "wrongdoing" to support her claim for violating the Pennsylvania Whistleblower Law (Count III).

Ms. Kuznik alleges at Count III of the amended complaint that the County terminated her employment because she made a "good faith reporting of wrongdoing" regarding "lapses in election security and violations of best practices," in violation of the Pennsylvania Whistleblower Law (43 Pa. Stat. Ann. § 1421 *et seq.*). ECF 16, ¶¶ 146-49; ECF 54, p. 7. The Court finds that the record does not support that cause of action.

The only evidence that Ms. Kuznik cites is her deposition testimony, in which she describes a report she made for the County Commissioners "to express [her] concerns regarding some very serious cyber security problems and other problems that existed in the County, by [her] observation." ECF 51-1, 109:22-110:14. However, she admitted that she never sent the document to the Commissioners or any other County employee, so that report can't support her claim. *Id.* at 110:15-19.

The other purported "report" that she made was an unspecified email to the County expressing concerns about "passwords being left by the computer" and that the County may not have performed a background check on Mr. Jessell against "best practices." *Id.* at 112:2-25. But neither of those alleged practices rises to the level of "waste" or "wrongdoing" to support retaliation under the Whistleblower Law. *See* 43 Pa. Stat. Ann. § 1422 (defining "waste" as "An employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources" and "wrongdoing" as "A violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a

code of conduct or ethics designed to protect the interest of the public or the employer"). Accordingly, this claim fails as a matter of law, and the Court will grant summary judgment for the County.

### B. The Court will grant summary judgment for the County on Ms. Kuznik's claim for violating the Pennsylvania Human Relations Act for the same reasons as the federal claims (Count IV).

The framework for analyzing Title VII claims applies to claims under the Pennsylvania Human Relations Act (43 Pa. Stat. Ann. § 951 *et seq.*). *Patra v. Pennsylvania State Sys. of Higher Educ.*, No. 20-2320, 2023 WL 4618292, at *6 (3d Cir. July 19, 2023). Thus, this claim fails for the same reasons that the claims at Counts I and II fail.

### C. Ms. Kuznik cannot overcome the presumption of at-will employment, so the Court will grant summary judgment for the County and Commissioners on her claim for breach of contract (Count V).

Ms. Kuznik brings a claim for breach of contract against the County and the three County Commissioners, even though she was an at-will employee. Her claim fails because she cannot overcome the presumption of at-will employment here.

"An at-will employment relationship may be terminated by either the employer or the employee at any time, for any reason, or for no reason." *Deal v. Child.'s Hosp. of Phila.*, 223 A.3d 705, 711 (Pa. Super. Ct. 2019). A presumption of at-will employment applies in Pennsylvania, and controls if the plaintiff acknowledged that the employment is at-will. *Id.* It is undisputed that Ms. Kuznik signed a form acknowledging that she was an at-will employee of the County; indeed, her complaint seems to admit as much. ECF 16, ¶ 75 ("Although Pennsylvania is an at-will employment state, there are exceptions to the doctrine that an at-will employee may be terminated for any reason or no reason[.]"); ECF 51-1, 123:19-124:15; ECF 51-12.

Despite her admission, Ms. Kuznik argues that the presumption should not apply because "additional consideration" in the form of certain hardships in her

employment existed to turn her at-will employment into one that was essentially contractual, terminable only for cause. ECF 54, p. 5. She specifically points to the additional consideration of difficulties presented by the 2020 election and the new election requirements for the 2020 election. *Id.* There are at least two problems with this argument.

First, her duties weren't additional consideration. Recall that Ms. Kuznik was the Elections Director—essentially an executive position. Her job duties were broad, and certainly demanding. ECF 51-1, 43:10-44:14; ECF 51-17, p. 1. Her alleged hardships merely reflect the ordinary services that Ms. Kuznik was hired to perform. *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 73 (Pa. 1991). Facing challenges in the performance of one's job duties aren't additional consideration—they are hardships "commensurate with those incurred by all manner of salaried professionals." *Veno v. Meredith*, 515 A.2d 571, 580 (Pa. 1986).

Second, even if one could construe the greater demand as potentially being additional consideration, that wouldn't create a contractual relationship. A plaintiff "cannot rebut the presumption of at-will status" where she acknowledged that the employment was at-will, even if there is additional consideration. *Ajayi v. Rice Energy*, No. 20-35, 2021 WL 2457508, at *9 (W.D. Pa. June 16, 2021) (Colville, J.).[9]

Whether there is additional consideration to rebut the at-will presumption is a question generally left for the jury; but where, as here, "the resolution of the issue

---

[9] Ms. Kuznik also curiously points to having to study for the Bar exam as additional consideration. ECF 54, p. 5. But that was something she also asserts that she did on her own free time, and admission to the bar was not a prerequisite for her position. ECF 51-1, 90:6-14 (Ms. Kuznik testifying that she only studied on weekends while serving as Elections Director). Additionally, Ms. Kuznik mentions that she forewent other job opportunities to accept her position with the County. ECF 54, p. 5. That too doesn't transform her at-will position into a contractual one. *Woods v. Era Med LLC*, 677 F. Supp. 2d 806, 821 (E.D. Pa. 2010) (foregoing alternative employment opportunities, without more, does not amount to additional consideration).

is so clear that reasonable minds would not differ on its outcome[,]" the Court may reach the issue. *Woods v. Era Med LLC*, 677 F. Supp. 2d 806, 817 (E.D. Pa. 2010) (cleaned up). So, for the reasons above, the Court will grant summary judgment for the County Defendants as to Count V.

### D. There is no evidence that Mr. Jessell caused Ms. Kuznik harm, so the Court will dismiss the tortious-interference claim.

At Count VI, Ms. Kuznik alleges that Mr. Jessell intentionally and tortiously interfered with her "contract" (*i.e.*, at-will employment relationship) with the County. *Salsberg v. Mann*, 310 A.3d 104, 120 (Pa. 2024) (recognizing that a plaintiff may maintain a cause of action for tortious interference with an at-will employment relationship).

Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove, among other things, "legal damage to the plaintiff as a result of the defendant's conduct[.]" *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 212 (3d Cir. 2009); *see also* Restatement (Second) of Torts § 766 (1979) (tortious interference requires a showing of the defendant "inducing or otherwise causing the third person not to perform the contract"). In other words, Ms. Kuznik must prove that she suffered damage and that Mr. Jessell caused that damage. For the reasons discussed above, Ms. Kuznik cannot produce any evidence to make that showing.

Like her federal discrimination claims, the basis for the tortious interference claim is Mr. Jessell's animus and his complaints to the County about Ms. Kuznik's performance issues. ECF 16, ¶ 156 (asserting Mr. Jessell intentionally interfered with Ms. Kuznik's employment with the County "by . . . asserting falsehoods regarding [her]"); ECF 54, p. 9 ("evidence supports the inference that the complaints that Mr. Jessell made against Ms. Kuznik were both false and motivated by an

animus based on sex."). But as explained above, the record does not support that Mr. Jessell was the cause of the County's decision to terminate Ms. Kuznik's employment.

There is simply no evidence to infer that Mr. Jessell held influence over the County Commissioners in their decision to terminate Ms. Kuznik's employment, based on discriminatory animus or otherwise. In fact, the evidence is undisputed that the County terminated Ms. Kuznik's employment based on complaints from County employees, poll workers, judges of elections, and civilians throughout her tenure, not just Mr. Jessell. ECF 51-2, 50:21-25; ECF 51-4. Commissioner Fabian testified that Mr. Jessell's concerns "were backed up" by other employees and members of the public, and "weren't the reason [Ms. Kuznik's employment] was terminated[.]" ECF 51-2, 61:12-23. Ms. Kuznik offers nothing in response to create a dispute of fact on the matter.

Accordingly, the Court will grant summary judgment for Mr. Jessell.[10]

## CONCLUSION

For the foregoing reasons, the Court will enter summary judgment against Plaintiff and in favor of Defendants on all claims in the amended complaint. A separate judgment order follows.

DATED this 16th day of May, 2024.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge

---

[10] Mr. Jessell raises several other bases to dismiss Count VI, but the Court does not and need not reach them.